## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE:<br><br>Harold H. Pavilack,<br><br>Debtor. | C/A No. 10-06503-jw<br><br>Chapter 11 |

### DEBTOR'S OBJECTION TO THE MOTION OF THE UNITED STATES TRUSTEE FOR AN ORDER DIRECTING THE APPOINTMENT OF A CHAPTER 11 TRUSTEE

Harold H. Pavilack ("Debtor"), the above-captioned debtor-in-possession, hereby files this objection ("Objection") to the Motion of the United States Trustee ("UST") For an Order Directing the Appointment of a Chapter 11 Trustee ("Motion"). In support of this Objection, the Debtor submits the following:

### *JURISDICTION AND VENUE*

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and Local Civil Rule 83.IX.01, D.S.C. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### *BACKGROUND*

3. On August 20, 2010, First Federal Savings and Loan Association of Charleston, Atlantic Bank and Trust, and Wells Fargo Bank (collectively "Petitioning Creditors") filed an involuntary petition seeking relief from the Debtor pursuant to chapter 7 of the Bankruptcy Code.

4. Debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code on September 7, 2010.

1

5. On September 16, 2010, the Court entered an Order Appointing Chapter 11 Examiner on motion filed by the Petitioning Creditors. The UST filed an Application for Order Approving Appointment of Examiner on September 20, 2010. The appointment of George W. DuRant ("Examiner") was approved by order of the Court on September 24, 2010.

6. On September 16, 2010, the Court entered an order directing the appointment of an examiner and providing that Debtor, or any entity controlled or managed by the Debtor, shall make no expenditures without prior approval of Examiner.

7. On October 6, 2010 the Court held a hearing pertaining to the applications to employ the McCarthy Law Firm, LLC ("Bankruptcy Counsel") as Debtor's bankruptcy counsel and Marty P. Ouzts ("Accountant") as Debtor's Accountant. The Court approved both applications. The Court also approved the Debtor's cash payments of retainers to Bankruptcy Counsel and Accountant. The employment of the McCarthy Law Firm, LLC was finalized by this Court's order (Docket 83) entered on October 11, 2010. A consent order approving the employment of Accountant as Debtor's Accountant with Special Powers (Docket 101) was entered on October 14, 2010.

8. Following the October 6, 2010 hearing, Debtor informed his counsel and Accountant that he had cash and safe deposit boxes located in the Myrtle Beach area. At this point, Debtor made arrangements to gather the money and deposit it in the Debtor's debtor-in-possession bank account ("DIP Account"). Between the October 6, 2010 hearing and October 12, 2010, Debtor deposited approximately $1,170,000 into the DIP Account.

9. On October 12, 2010 Debtor filed a motion to permanently expand the powers of Accountant, allowing Accountant to serve as a restructuring professional throughout the case. The motion to expand Accountant's powers is scheduled for hearing on an expedited basis, taking place on November 3, 2010.

### *MEMORANDUM*

The Debtor hereby objects to the UST's Motion and contends that cause for the appointment of a chapter 11 trustee is not present and further asserts that the appointment of a chapter 11 trustee is not in the best interests of the bankruptcy estate or Debtor's creditors. The Bankruptcy Code provides:

> § 1104 Appointment of trustee or examiner
> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee—
> (1) For cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;
> (2) If such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
> (3) If grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1104(a).

A movant seeking the appointment of a chapter 11 trustee has the burden to prove "cause" pursuant to 11 U.S.C. § 1104(a)(1), or the need for a trustee under §1104(a)(2) by clear and convincing evidence. *See In re 1031 Tax Group, LLC*, 374 B.R.

3

78, 85-86 (Bankr. S.D.N.Y. 2007); *In re Euro-American Lodging Corp.*, 365 B.R. 421, 426 (Bankr. S.D.N.Y. 2007); *In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 656 (Bankr. S.D.N.Y. 2006) (citing *In re Marvel Entetm't Group, Inc.*, 140 F.3d 463, 471 (3d Cir. 1998)); *In re Evans*, 48 B.R. 46, 47 (Banker. D. Tex. 1985) (stating the movant is required to show, by clear and convincing evidence, that there is a necessity for the court to appoint a trustee); *In re Davis*, 2010 WL 2640587, *2 (Bankr. E.D.N.C. 2010); *but see Tradex Corp. v. Morse (In re Tradex Corp.)*, 339 B.R. 823 (D. Mass. 2006). The clear and convincing standard is appropriate based upon the "strong presumption that a debtor should remain in possession absent a showing of need for the appointment of a trustee." *1031 Tax Group*, 374 B.R. at 85 (citing *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 167 (Bankr. S.D.N.Y. 1990)).

The Bankruptcy Code provides that a chapter 11 debtor's estate is administered by the debtor in possession, who has all of the same rights, powers, and duties of a trustee. *See* 11 U.S.C. § 1107. This is consistent with "the overriding philosophy of Chapter 11, which is to give the debtor a second chance." *Comm. Of Dalkon Shield Claimants v. A.H. Robbins Co., Inc.*, 828 F.2d 239, 240-41 (4th Cir. 1987). The appointment of a trustee under § 1104 is an extraordinary remedy, which should not be granted lightly. *Euro-American Lodging*, 365 B.R. at 426; *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3rd Cir. 1989) ("It is settled that appointment of a trustee should be the exception, rather than the rule.")

I.  Debtor's Actions Do Not Rise to the Level of Cause for Trustee Appointment.

The Bankruptcy Code provides a non-exclusive list directing that "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current

4

management" may rise to the level of cause for the appointment of a trustee. 11 U.S.C. 1104(a)(1). Keeping this in mind, the philosophy of chapter 11 is to give the debtor a "second chance" and, consistent with such philosophy, current management should be permitted to identify and correct its past mistakes. *Ionosphere*, 113 B.R. at 168 (citing H.R.Rep. No. 595, 95th Cong., 1`st Sess. 220 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6179, 6180). Through § 1104(a)(1) the Bankruptcy Code represents Congressional recognition that some degree of mismanagement may exist in every insolvency case. A finding of incompetence, dishonesty, and the like, for the purposes of § 1104(a)(1) implies that the conduct shown rises to a level sufficient to warrant the appointment of a trustee. *See In re General Oil*, 42 B.R. 402, 409 (Bankr. E.D.N.Y 1984). Whether a debtor's actions rise to the level of "cause" is a determination to be made within a bankruptcy court's substantial discretionary authority. *See Dalkon Shield*, 828 F.2d at 242. Once the court makes a finding that cause exists under § 1104(a)(1), there is no discretion; an independent trustee must be appointed. *In re V. Savino Heating Co., Inc.*, 99 B.R. 518, 525 (Bankr. E.D.N.Y. 1989).

In *Dalkon Shield*, the party seeking the appointment of a trustee moved on the basis that the debtor made payments on pre-petition claims, used subsidiaries to make prohibited charitable contributions, and used subsidiaries to make investments in contravention of a prior court order. That debtor's actions lead to the issuance of an order holding the debtor in civil contempt. Despite the civil contempt finding, that court held that debtor's actions and poor management choices did not equate the "cause" for the appointment of a trustee.

5

More recently a bankruptcy court in the Western District of North Carolina found cause for the appointment of a trustee where the debtor was under indictment for criminal conduct. *Davis*, 2010 WL 2640587 at *1. That debtor was under grand jury indictment for felony construction fraud. Additionally, that debtor was issuing postdated checks on which the payee fields were left blank. That court found that such evidence of gross mismanagement was exacerbated by the debtor ordering a stop payment on the checks when they were presented on the indicated dates. *Id.* at *3.

In the case at hand, cause is not present to replace the Debtor, as debtor-in-possession, with a trustee. Debtor has not frustrated the bankruptcy process to such an extent that the issuance of a civil contempt order is necessary. However, as demonstrated in *Dalkon Shield*, even a civil contempt order may not lead to "cause" for the appointment of a trustee. Further, unlike the debtor in *Davis* where a trustee was necessary on account of a criminal indictment and continuing inappropriate financial transactions, this Debtor has neither been charged with a crime nor continued to act in a financially irresponsible manner. The appointment of a trustee is not necessary or appropriate here.

In this case, the UST argues that the Debtor, as an individual, cannot replace management. While it is obvious that the Debtor is unable to replace himself, since the filing of his chapter 11 petition, the Debtor has availed himself of the employment of professionals capable of reorganizing his affairs and restructuring his companies. The appointment of a trustee is not necessary to effectuate this reorganization.

The UST further calls attention to statements of the Debtor's prior counsel in this case that there was no "funny business" on the Debtor's part and the Debtor's failure to

6

correct prior counsel's assertion. While indeed the Debtor's primary use of cash in his management is uncommon, it does not amount to gross mismanagement or "funny business." Indeed, the money was primarily used for the payment of bills, payroll, and mortgages. The Debtor did not act dishonestly by failing to correct his prior bankruptcy counsel because the statements were largely accurate; the cash maintained in the Debtor's offices was used to fund the payment of bills, payroll, and mortgages. Debtor asserts that he can account for his use of the cash funds. The Debtor began to use cash on or about February 1, 2010 to avoid judicial attachment of his assets based upon a confession of judgment duly executed but inappropriately filed by a single creditor. Such dissipation by attachment would have put the Debtor out of business. Therefore, while the Debtor's management approach was unorthodox, it does not rise to the level of gross mismanagement because it allowed the Debtor to maintain and operate his businesses.

While the UST disparages the Debtor's honesty, the fact remains that the Debtor turned over approximately $1,170,000 in cash, which is now maintained in the DIP Account. While the Debtor did not immediately disclose the location of his substantial cash holdings to the Examiner, his Accountant, or his bankruptcy counsel, the basis for his delay was not a function of dishonesty. Rather the basis for the delay was a function of the Debtor's concern that disclosure of the cash would result in immediate seizure of the asset, which would result in the closure of his businesses leaving his employees without a job. Upon comprehending that the Bankruptcy Code would protect this asset, allowing him to continue operations, Debtor immediately turned over the asset.

The First Report of Examiner calls attention to alterations made to a letter from Atlantic Bank & Trust by a former employee of the Debtor. The evidence before the

7

Court, in the form of testimony by Elizabeth J. Mantano-Tenan the financial director for Pavilack Finance and Mortgage in addition to the Debtor personally, is that the Debtor ordered the termination of the employee responsible for the alteration immediately upon learning that the employee had altered the date on a document submitted to the Atlanta Housing Authority.  The alteration to the documents occurred on March 1, 2010 and the employee was terminated on March 2, 2010.  Following the termination of the employee responsible for the alteration, a letter correcting the altered document was sent to the Atlanta Housing Authority and an apology was issued to Atlantic Bank & Trust.  The Debtors prompt response of firing an employee responsible for altering the date on a document submitted to a governmental entity and correcting the improper asserting is not gross mismanagement.

For the reasons detailed above, the Debtor's actions, while certainly unusual and idiosyncratic, do not rise to the level of "cause" for the appointment of a trustee pursuant to § 1104(a)(1).

II.     Allowing the Debtor to Remain is Possession is in Parties' Best Interests.

The Bankruptcy Code provides that after notice and a hearing, a court "shall" order the appointment of a trustee "if such appointment is in the interests of creditors … and other interests of the estate, without regard to … the amount of assets or liabilities of the debtor …." 11 U.S.C. § 1104(a)(2).  Courts construing this subsection "eschew rigid absolutes and look to the practical realities and necessities" of the record to determine whether the appointment of a trustee is in the best interests of the estate.  *Adelphia Commc'ns*, 336 B.R. at 658.  The standard for appointment under § 1104(a)(2) is a flexible one that suggests a balancing of costs and benefits in determining whether the

8

appointment of a trustee is appropriate. *In re Taub*, 427 B.R. 208, 227 (Bankr. E.D.N.Y. 2010).

Upon the enactment of the Bankruptcy Act, the House Report summarized the reasons for Congress' adoption of a flexible standard for the appointment of trustees, as follows:

> The twin goals of the standard for appointment of a trustee should be protection of the public interest and the interests of creditors, as contemplated in current chapter X and facilitation of a reorganization that will benefit both creditors and the debtors, as contemplated in current chapter XI. Balancing of the goals is a difficult process, and requires consideration of many factors.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 232 (1977), U.S.Code Cong. & Admin.News 1978, p. 6192. Factors to be weighed in determining whether to direct the appointment of a trustee include the debtor's past and present performance and prospects for rehabilitation, the confidence of the business community and creditors in the debtor's management, and the benefits to be derived from the appointment of a trustee balanced against the costs of appointment. *In re Ridgemour Meyer Props., LLC*, 413 B.R. 101, 112 (Bankr. S.D.N.Y. 2008).

Acrimony between a creditor and a debtor has been found to be sufficient cause for the appointment of a trustee. *Taub,* 427 B.R. at 227. A "court may find cause to appoint a trustee for 'acrimony' only on a case-by-case basis, when the inherent conflicts extend beyond the healthy conflicts that always exist between debtor and creditor, when the parties 'begin working at cross-purposes.'" *Marvel Entm't Group*, 140 F.3d at 473-74 (quoting *In re Cajun Elec. Power Co-op., Inc.*, 74 F.3d 599, 600 (5th Cir. 1996). A trustee should also be appointed to replace a debtor in possession who suffers from material conflicts of interest. *Ridgemour*, 413 B.R. at 113. A court may appoint a trustee

9

based upon a debtor's failure to move a case forward causing creditors to lose faith in the potential for successful reorganization. *In re Sundale, Ltd.*, 400 B.R. 890, 909-10 (Bankr. S.D. Fla. 2009).

In the case at hand, the UST relies upon the Debtor's very attempt to reorganize as his basis for the appointment of a trustee. Here, the Debtor and the Petitioning Creditors came to a consensual agreement that the Debtor should employ the services of a restructuring professional. The UST incorrectly asserts that this action is an admission by the Debtor that he is unable to manage his affairs, rather the employment of a restructuring professional is a demonstration of the Debtor's resolve to reorganize his management and cooperate in the interest of his creditors.

For these reasons, the UST's motion to appoint a trustee pursuant to § 1104(a)(2) should be denied.

## *CONCLUSION*

Based upon the reasons detailed above and pursuant to the authorities contained herein, the Debtor requests that this Court deny the UST's Motion and allow the Debtor to remain in possession and grant such other and further relief as this Court deems appropriate and just.

RESPECTFULLY SUBMITTED on this the 1st day of November 2010, at Columbia, South Carolina.

**(Signature page follows this page.)**

November 1, 2010

                                         MCCARTHY LAW FIRM, LLC

                             By:  /s/G. William McCarthy, Jr.
                                    G. William McCarthy, Jr., I.D.#2762
                                    Daniel J. Reynolds, Jr., I.D.#9232
                                    Sean P. Markham, I.D. #10145
                                    Counsel for the Debtor-in-Possession
                                    1715 Pickens Street
                                    Columbia, SC 29211
                                    (803) 771-8836
                                    (803) 779-0267 (fax)